IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00910-DDD-KAS

JEFFREY PAN, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

ATLAS REAL ESTATE GROUP LLC,

    Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Plaintiff's **Unopposed Motion for Attorney Fees, Costs, and Service Award** [#60] (the "Motion"). The Court has reviewed the Motion [#60], the accompanying Brief [#61] and Declaration of Raina C. Borrelli [#62], the entire case file, and the applicable law. In the Motion [#60], Plaintiff asks the Court to: (1) approve Plaintiff's counsel's request for attorney fees and costs in the total amount of $215,000, and (2) approve a service award for the named Plaintiff Jeffrey Pan in the amount of $2,500. *Motion* [#60] at 1; *see also Brief* [#61] at 13. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#60] be **GRANTED**.[1]

---

[1] Because the issue of fees and costs to be awarded in a class action is a dispositive matter, the undersigned must issue a Recommendation on the Motion [#60]. *See* Fed. R. Civ. P. 23(h)(4) ("The court may refer issues related to the amount of the award to . . . a magistrate judge, as provided in Rule 54(d)(2)(D)."); Fed. R. Civ. P. 54(d)(2)(D) ("[T]he court . . . may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter."); Fed. R. Civ. P. 72(b)(1) ("The magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact.").

## I. Background

Plaintiff Jeffrey Pan filed this action on April 12, 2023, asserting eight claims against Defendant Atlas Real Estate Group LLC, which "is a property management and real estate brokerage company active throughout the United States": (1) negligence, (2) negligence per se, (3) breach of implied contract, (4) breach of fiduciary duty, (5) unjust enrichment, (6) violations of the Colorado Consumer Protection Act, (7) invasion of privacy, and (8) declaratory judgment. *Compl.* [#1] ¶¶ 2, 78-177. In short, these claims are based on Defendant's alleged "failure to protect highly sensitive data," including personal identifiable information, also known as "PII," "when cybercriminals infiltrated its insufficiently protected computer systems in a data breach[.]" *Id.* ¶¶ 1, 3. The data of more than 4,500 people was exposed in the breach, including information such as names, Social Security numbers, financial account numbers, and driver's license numbers. *Id.* ¶¶ 20-21.

After conducting initial discovery in the case, the parties participated in private mediation and ultimately reached a settlement. *See Borrelli Decl.* [#62] ¶¶ 3, 6; *Settlement Agreement* [#54-1]. On November 7, 2024, the undersigned issued a Recommendation [#58] that the District Judge grant Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement [#53]. On December 3, 2024, the District Judge adopted that Recommendation and set a Final Fairness Hearing for April 23, 2025. *Order* [#59]. That motion and order did not address the attorney fees, costs, and service award which are the subject of the present Motion [#60]. As is relevant here, the Settlement Agreement [#54-1] contemplates Class Counsel seeking an award of fees *and* costs "in an amount

not to exceed" $215,000.00. *Settlement Agreement* [#54-1] at 14 ¶ 8.2.[2] The Settlement Agreement also contemplates Class Counsel seeking a service award of $2,500 to recognize Plaintiff's efforts in the litigation and commitment to the Settlement Class. *Id.* at 14 ¶ 8.1. Defendant has agreed to pay for the fees, costs, and service award separate and apart from the cash compensation provided to the Settlement Class, and these amounts are subject to approval by the Court. *Id.* at 14 ¶¶ 8.1-8.2.

## II.  Analysis

**A.  Service Award**

Class Counsel asks the Court to approve an award of $2,500 to the sole named Plaintiff in this action, Jeffrey Pan, to recognize his service to the Settlement Class as a whole. *Brief* [#61] at 12-13.

"[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftan Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). "These services typically include monitoring class counsel, being deposed by opposing counsel, keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." *Id.* (citation and internal quotation marks omitted). A service award "should be proportional to the contribution of the plaintiff." *Id.*

In support of the requested service award, Class Counsel notes, among other things, "Plaintiff spent time reviewing the pleadings, answered Class Counsel's many questions, remained available throughout the litigation process, and reviewed and

---

[2] The Court cites to the CM/ECF docket's page number for the Settlement Agreement [#54-1] rather than to any internal page numbering on the document itself.

approved the Settlement." *Brief* [#61] at 12; *Borelli Decl.* [#62] ¶ 32; *see also Settlement Agreement* [#54-1] at 14 ¶ 8.1 (discussing the service award). Based on his involvement in the case, the Court finds that a service award of $2,500 is fair and reasonable. *See, e.g.*, *Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 WL 5187565, at *10 (D. Kan. Dec. 20, 2024) (approving service awards of $2,500, $1,360, and $780 for each of the three named Plaintiffs, respectively, based on each one's differing contributions in a similar data breach class action); *Beasley v. TTEC Servs. Corp.*, Nos. 22-cv-00097-PAB-STV, 22-cv-00347-PAB-STV, 2024 WL 710411, at *7 (D. Colo. Feb. 21, 2024) (approving a service award of $2,500 in a similar data breach class action).

Accordingly, the Court **recommends** that the Motion [#60] be **granted** to the extent that the $2,500 service award to Plaintiff Jeffrey Pan be **approved**.

**B.   Costs and Fees**

Pursuant to Fed. R. Civ. P. 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." In so doing, the court must ensure that the claim for fees and costs is made by a motion under Rule 54(d)(2), that notice of the motion is directed to class members, and that a class member or party from whom payment is sought may object. Fed. R. Civ. P. 23(h)(1)-(2). These requirements have been met. *See* [#54-1] at 34 (Notice of Proposed Class Action Settlement, approved by the District Judge at Order [#59], by adoption of the Recommendation [#58] at 20).

**1.   Costs**

Class Counsel asks the Court to approve an award of costs in the amount of $8,157. *Brief* [#61] at 12. There are two components to these costs: (1) $407.00 in filing

4

fees, and (2) $7,750.00 in mediation fees for the private mediator, Stradley Ronon Stevens & Young, LLP. *Borrelli Decl.* [#62] ¶ 31. The Court finds these costs to be reasonable. *See, e.g.*, *Krant*, 2024 WL 5187565, at *9 (approving an award of costs of $28,755.17 in a similar data breach class action, where the costs were "necessary to litigate this case effectively, and were of the type counsel normally would charge a paying client"); *Beasley*, 2024 WL 710411, at *7 (approving an award of costs of $14,080.53 for "filing fees, legal research, postage, and mediation expenses" in a similar data breach class action).

Accordingly, the Court **recommends** that the Motion [#60] be granted to the extent that an award of $8,157 in costs be **approved**.

   **2.   Fees**

The Settlement Agreement contemplates a total award of no more than $215,000 for both costs and fees collectively. *Settlement Agreement* [#54-1] at 14 ¶ 8.2 ("Settlement Class Counsel will not request an award of attorneys' fees *and* costs exceeding two-hundred and fifteen thousand dollars and no/100 ($215,000.00)") (emphasis added). In the Motion [#60], Plaintiff seeks an award of the full amount of $215,000 for both costs and fees collectively. *Brief* [#61] at 1. Thus, because the Court recommends that $8,157 in costs be approved, *see* § II.B.1., the Court determines whether the remaining $206,843 is a reasonable amount of fees to be awarded.

In common fund class action settlement cases, the court retains the discretion to apply either the "percentage-of-the-fund method" or the "lodestar method" of determining the reasonableness of fees. *In re Syngenta AG MIR 162 Corn Litig*, 61 F.4th 1126, 1193 (10th Cir. 2023) ("[B]ecause the touchstone of a fee award analysis is reasonableness,

5

[the Tenth Circuit] do[es] not require rigid adherence to either the percentage-of-the-fund or lodestar methods in the common fund context."). However, the Tenth Circuit has repeatedly expressed a preference for utilizing the percentage-of-the-fund method in common fund cases and the lodestar method in statutory fee cases. *See, e.g., id.* (recognizing the Tenth Circuit's "preference for the percentage-of-the-fund approach" in common fund cases); *Chieftain Royalty Co.*, 888 F.3d at 458 ("This court has approved both methods in common-fund cases, although expressing a preference for the percentage-of-the-fund approach."); *Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993) (recognizing that the Tenth Circuit had previously "distinguished common fund cases from statutory fee cases and recognized the propriety of awarding attorneys' fees in the former on a percentage of the fund, rather than lodestar, basis").

Regardless of the method used, the Court applies the twelve *Johnson* factors[3] to determine the reasonable of the fee request. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988); *see also In re Syngenta AG MIR 162 Corn Litig*, 61 F.4th at 1193 (reaffirming the requirement that district courts consider the *Johnson* factors). Those factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee . . . ; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[3] The so-called *Johnson* factors were articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

*Brown*, 838 F.2d at 454-55. However, "in evaluating the reasonableness of a fee award, a court need not specifically address each *Johnson* factor," and often not all factors are relevant. *Beasley*, 2024 WL 710411, at *7 (citing *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998); *Brown*, 838 F.2d at 455-56 (stating that "rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation," and finding that "[t]he court here clearly considered all of the relevant *Johnson* factors and applied them appropriately")).

Here, the fee arrangement made by the parties obviously does not fall into the statutory fee award category, for which the lodestar method is usually most appropriate. However, the fee arrangement also does not fall neatly into the common fund category, for which the percentage-of-the-fund method is usually most appropriate, because Defendant has agreed to pay for the fees award separate and apart from the cash compensation provided to the Settlement Class. *Settlement Agreement* [#54-1] at 14 ¶ 8.2. Of these two, though, the Court finds the percentage-of-the-fund method aligns mostly closely with the circumstances of this case, given that it is a class action settlement where the fees are based on the parties' agreement and not on a statutory fee award.

As Plaintiff notes, "the total monetary value of the Settlement can be approximated by combining the value of the different components of the Settlement." *Brief* [#61] at 4. The Court takes the size of the class (4,520 individuals, *see Borrelli Decl.* [#62] ¶ 2) and multiplies it by the value of the cash payments available to each member of the class. *See id.* Thus, the amount available for reimbursement of ordinary losses is 4,520 times $2,000 per class member, which equates to $9,040,000. *Borrelli Decl.* [#62] ¶ 12; *Settlement Agreement* [#54-1] at 7 ¶ 3.2(a). The amount available for lost time is 4,520

7

times $80 per class member, which equates to $361,000. *Borrelli Decl.* [#62] ¶ 13; *Settlement Agreement* [#54-1] at 7 ¶ 3.2(b). The amount available for extraordinary losses is 4,520 times $5,000 per class member, which equates to $22,600,000. *Borrelli Decl.* [#62] ¶ 14; *Settlement Agreement* [#54-1] at 7-8 ¶ 3.2(c). The Settlement Agreement also provides for two years of three-bureau credit monitoring and at least $1,000,000 in identity theft protection insurance, which is valued at about $1,084,800 (consisting of 4,520 times 24 months times an estimated cost of $10 per month). *Borrelli Decl.* [#62] ¶ 16; *Settlement Agreement* [#54-1] at 8 ¶ 3.4.[4] Thus, adding $9,040,000 (ordinary losses) plus $361,000 (lost time) plus $22,600,000 (extraordinary losses) plus $1,084,800 (credit monitoring) equates to a direct value of the settlement to the class of up to about $33,085,800.[5]

The $206,843 in fees requested by counsel is only a small fraction of this number, approximately 0.625%. Even if only a quarter of the potential value of the settlement were ultimately paid out, i.e., about $8,271,450, the fee request would still only result in a percentage of about 2.5%. Although this percentage appears to be presumptively reasonable, the Court now considers the twelve *Johnson* factors, as it must. *See In re Syngenta AG MIR 162 Corn Litig*, 61 F.4th at 1193.

---

[4] Plaintiff also notes that the Settlement Agreement provides for an alternative cash payment of $50 per class member, but because this payment would be made *in lieu of* claims for ordinary losses, lost time, extraordinary losses, and credit monitoring, the Court finds that this amount should not be added to the settlement's valuation, as it would be duplicative. *See Borrelli Decl.* [#62] ¶ 15; *Settlement Agreement* [#54-1] at 8 ¶ 3.3.

[5] This number does not include the fact that, under the Settlement Agreement [#54-1], Defendant is also paying for the costs of Notice and Claims Administration (about $16,339), the service award ($2,500), costs ($8,157), and "information security improvements" to prevent a future data breach, all of which arguably adds to the value of the settlement for class members. *See Borrelli Decl.* [#62] ¶¶ 17-19; *Settlement Agreement* [#54-1] at 8 ¶¶ 3.5, 4.1 & 14 ¶¶ 8.1-8.2.

8

### a. The Time and Labor Required

Regarding the time and labor required, Class Counsel has so far expended 179.30 hours of time on this matter.[6] *Borrelli Decl.* [#62] ¶ 21 (chart). The labor included: (1) investigation of the data breach; (2) communication with prospective class representatives; (3) drafting the Complaint [#1]; (4) drafting Plaintiff's Response [#24] to Defendant's Motion to Dismiss [#14]; (5) researching case law; (6) reviewing Defendant's discovery responses and production; (7) drafting Plaintiff's mediation statement; (8) preparing for and attending mediation; (9) drafting the settlement's term sheet; (10) drafting the Settlement Agreement, *see* [#54-1] at 1-22; (11) securing bids for settlement administration; (12) drafting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement [#53] and Memorandum [#54] in support; (13) preparing the notice documents, *see* [#54-1] at 23-44; (14) overseeing the claims administration process, and (15) drafting the current Motion [#60] and related documents [#61, #62]. *Borrelli Decl.* [#62] ¶ 21.

Based on these representations, the Court finds that the first factor weighs in favor of approval. *See, e.g.*, *Stanley v. Panorama Orthopedics & Spine Ctr., P.C.*, No. 1:22-cv-01176-RM-SBP, 2024 WL 1743497, at *13 (D. Colo. Apr. 23, 2024) (finding that the first factor weighed in favor of approval where the plaintiffs' counsel "has dedicated significant time and resources to this multi-year litigation, including in connection with two formal

---

[6] Specifically, these hours were expended by counsel and her firm as follows: (1) Raina C. Borrelli, Managing Partner: 58.70 hours; (2) Samuel J. Strauss, Managing Partner, 18.20 hours; (3) Brittany Resch, Partner: 5.80 hours; (4) Andrew Gunem, Associate Attorney: 54.40 hours; (5) Carolyn Chen, Associate Attorney: 39.70 hours; (6) Zog Begolli, Associate Attorney, 0.20 hours; (7) Rudis Requeno, Legal Assistant, 1.0 hour; (8) Elizabeth Adell, Legal Assistant, 1.0 hour; and (9) Jack Rader, Legal Assistant: 0.3 hours. *Borrelli Decl.* [#62] ¶ 21 (chart).

mediations and the filing of multiple pleadings in this federal case, and more time will be spent in seeing the settlement through to its conclusion").

### b. The Novelty and Difficulty of the Questions Presented

Regarding the novelty and difficulty of the questions presented by the case, Class Counsel asserts that this "case implicated difficult questions including Article III standing, the relevance of the Supreme Court's decision in *TransUnion* [*LLC v. Ramirez*, 594 U.S. 413 (2021)], data breach case law, and eight different causes of action pursuant to common law and Colorado statutory law." *Borrelli Decl.* [#62] ¶ 24. These statements are supported by a review of the Complaint [#1] and Defendant's Motion to Dismiss Plaintiff Jeffrey Pan's Class Action Complaint Pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6) [#14], as well as Plaintiff's Response [#24] and Defendant's Reply [#27] thereto.

Based on this review, the Court finds that the second factor weighs in favor of approval. *See, e.g., Brown*, 838 F.2d at 455 ("The court records in this litigation attest to the novelty and difficulty of the questions presented.").

### c. The Skills Requisite to Perform the Legal Service Properly

Regarding the skills requisite to perform the legal service properly, Class Counsel, Ms. Borrelli, received her J.D. magna cum laude from the University of Minnesota Law School in 2011. *Borrelli Decl.* [#62] ¶ 36. She has repeatedly been named to the annual Minnesota "Rising Star" Super Lawyers list (2014-2021) by SuperLawyers Magazine. *Id.*

Strauss Borrelli PLLC is a Chicago-based law firm focusing on complex class actions, in particular such cases involving data security, privacy, and consumer protection. *Id*. ¶ 33. Ms. Borrelli is currently a partner at this firm, working in its nationwide class action practice and focusing on the litigation of complex class actions in federal and

state courts, including lawsuits concerning data breaches, the Telephone Consumer Protection Act, false advertising, and consumer protection issues. *Id.* ¶ 34. Before joining her current firm, she was a partner at two other firms where she also litigated complex class actions in federal and state courts. *Id.* ¶ 35.

In the last ten years, Ms. Borrelli has had substantial involvement in many complex class actions in federal and state courts, including: *Hudock v. LG Electronics USA, Inc.*, No. 16-cv-1220 (JRT/KMM) (D. Minn.); *Baldwin v. Miracle-Ear, Inc.*, No. 20-cv-01502 (JRT/HB) (D. Minn.); *In re FCA Monostable Gearshifts Litig.*, No. 16-md-02744 (E.D. Mich.); *Zeiger v. WellPet LLC*, No. 17-cv-04056 (N.D. Cal.); *Wyoming v. Procter & Gamble*, No. 15-cv-2101 (D. Minn.); *In re Big Heart Pet Brands Litig.*, No. 18-cv-00861 (N.D. Cal.); *Sullivan v. Fluidmaster*, No. 14-cv-05696 (N.D. Ill.); *Rice v. Electrolux Home Products, Inc.*, No. 15-cv-00371 (M.D. Pa.); *Gorczynski v. Electrolux Home Products, Inc.*, No. 18-cv-10661 (D.N.J.); *Reitman v. Champion Petfoods*, No. 18-cv-1736 (C.D. Cal.); and *Reynolds, v. FCA US, LLC*, No. 19-cv-11745 (E.D. Mich.). Borrelli Decl. [#62] ¶ 37.

In addition, Ms. Borrelli has significant past experience in data privacy litigation and is currently litigating more than a hundred data breach cases around the country as lead counsel or co-counsel, including: *In re Netgain Tech. Consumer Data Breach Litig.*, No. 21-cv-1210 (D. Minn.) (appointed by the court to the plaintiffs' Interim Executive Committee); *In re C.R. England, Inc. Data Breach Litig.*, No. 2:22-cv-374-DAK-JCB (appointed by the court as interim co-lead counsel); *Medina v. PracticeMax Inc.*, No. 22-cv-01261-DLR (D. Ariz.) (appointed to Executive Leadership Committee); *Forslund v. R.R. Donnelley & Sons Co.*, No. 1:22-cv-04260 (N.D. Ill.) (appointed as interim co-lead class counsel); *In re Lincare Holdings, Inc. Data Breach Litig.*, No. 8:22-cv-01472 (M.D.

11

Fla.) (appointed to Interim Executive Leadership Committee); *McLaughlin v. Flagstar*, No. 22-cv-11470 (E.D. Mich.); *Corra v. Acts Retirement Services, Inc.*, No. 2:22-cv-02917 (E.D. Pa.); *Grogan v. McGrath RentCorp., Inc.*, No. 22-cv-490 (N.D. Cal.); *Goetz v. Benefit Recovery Specialists, Inc.*, No. 2020CV000550 (Wis. Cir. Ct., Walworth Cnty.) (data breach settlement on behalf of 500,000 breach victims); *Kunkelman v. Curators of the University of Missouri, d/b/a MU Health Care*, No. 21BACV00182 (Mo. Cir. Ct., Boone Cnty.); *Baldwin v. Nat'l Western Life Ins. Co.*, No. 21-cv-04066-WJE (W.D. Mo.) (settlement on behalf of 800,000 data breach victims). *Borrelli Decl.* [#62] ¶ 38.

In short, Class Counsel undoubtedly has substantial experience in handling complex class action litigation generally as well as data breach cases specifically, and she therefore has the skills to properly perform the legal services required here. Thus, the Court finds that the third factor weighs in favor of approval. *See, e.g.*, *Beasley*, 2024 WL 710411, at *7 (finding this factor weighed in favor of approval where "[c]lass counsel have significant experience in class action cases and data breach litigation").

### d.     The Preclusion of Other Employment by the Attorney

Regarding the preclusion of other employment by the attorney due to acceptance of this case, Class Counsel notes that 179.30 hours were expended on this case, "which necessarily precluded Class Counsel from other employment during that time." *Brief* [#61] at 9. The Court finds that this fourth factor weighs in favor of approval. *See, e.g.*, *Stanley*, 2024 WL 1743497, at *13 (finding that this factor weighed in favor of approval where "counsel spent over 180 hours litigating this matter, an expenditure of time that necessarily precluded him from performing other work for more than one-twelfth of a calendar year").

12

    **e.**  **The Customary Fee**

Regarding the customary fee, Plaintiff asserts that this factor is inapplicable because "there is no 'customary fee' in class actions taken on contingency." *Borrelli Decl.* [#62] ¶ 25. The Court agrees and finds that this fifth factor is inapplicable. *See also Brown*, 838 F.2d at 455 ("The 'customary fee' factor in a common fund case is the same as the [twelfth] factor suggesting consideration of awards in similar cases.").

    **f.**  **Whether the Fee Is Fixed or Contingent**

Regarding whether the fee is fixed or contingent, this factor is "helpful but not determinative." *Brown*, 838 F.2d at 455. Here, Class Counsel took this lawsuit "on a wholly contingent basis—which posed the substantial risk of zero recovery." *Borrelli Decl.* [#62] ¶ 26. Courts generally find such agreements to weigh in favor of approval. *See, e.g.*, *Bilinsky v. Gatos Silver, Inc.*, No. 22-cv-00453-PAB-KAS, 2024 WL 4494290, at *7 (D. Colo. Oct. 15, 2024) ("Class counsel additionally took this case on a contingency basis, adding to the risk class counsel incurred by bringing the case.") (internal citation omitted); *Stanley*, 2024 WL 1743497, at *13 ("[C]ounsel worked on a contingency fee basis, thus assuming the risk that he would not recover any fees, but also providing access to counsel for persons who otherwise would not have been able to afford legal representation[.]"); *Beasley*, 2024 WL 710411, at *7 (similar). Here, too, the Court finds that the sixth factor weighs in favor of approval.

    **g.**  **Time Limitations Imposed by the Client or Circumstances**

Regarding time limitations imposed by the client or the circumstances of the case, Class Counsel notes that, "[i]n data breach cases, securing timely relief for Class Members is paramount given the ongoing risk of identity theft and fraud." *Borrelli Decl.*

13

[#62] ¶ 27. The Court agrees and therefore finds that the seventh factor weighs in favor of approval.

### h. The Amount Involved and the Results Obtained

Regarding the amount involved and the results obtained, this factor may be "decisive" in a common fund class action case. *Brown*, 838 F.2d at 455. Here, Plaintiff points out that "Class Counsel successfully obtained monetary and non-monetary relief that is both timely and tailored to the injuries arising from the Data Breach." *Borrelli Decl.* [#62] ¶ 28. As described in the Recommendation [#58], the results obtained in light of the amount involved is "fair, reasonable, and adequate" under the circumstances of this case. *See* [#58] at 15-17. Thus, the Court finds that the eighth factor weighs in favor of approval. *See, e.g.*, *Stanley*, 2024 WL 1743497, at *13 (finding that a "favorable result" weighed in favor of approval of this factor).

### i. The Experience, Reputation, and Ability of Counsel

Regarding the experience, reputation, and ability of counsel, the Court has already outlined Ms. Borrelli's significant background with respect to class actions and data breach cases in Section II.B.2.c. above. Her ability is demonstrated in this case by the favorable settlement which was obtained for the class. *See Borrelli Decl.* [#62] ¶ 29. The Court finds that this ninth factor weighs in favor of approval. *See, e.g.*, *Bilinsky*, 2024 WL 4494290, at *7 ("Class counsel have significant experience in class action cases and securities litigation, as reflected in the information provided to the Court."); *Stanley*, 2024 WL 1743497, at *13 ("[C]ounsel's extensive experience in litigation involving federal and state wage statutes and regulations is manifested in the successful outcome he achieved for his clients[.]").

### j.     The "Undesirability" of the Case

Regarding the "undesirability" of the case, Plaintiff again points out that "Class Counsel prosecuted this case on a wholly contingent basis—which posed the substantial risk of zero recovery." *Borrelli Decl.* [#62] ¶ 26. Courts have found that this type of arrangement weighs in favor of a finding of "undesirability." *See, e.g.*, *Stanley*, 2024 WL 1743497, at *13 ("[T]he case, which reasonably could only have been litigated via a contingency fee arrangement, likely rendered it undesirable to a large number of the members of the bar of this Court[.]"). The Court therefore finds that the tenth factor weighs in favor of approval.

### k.     The Professional Relationship with the Client

Regarding the professional relationship between counsel and the client, Plaintiff asserts that this factor is inapplicable because "Class Counsel did not have a professional relationship with the client before this case." *Borrelli Decl.* [#62] ¶ 30. The Court therefore also finds this eleventh factor to be inapplicable. *See, e.g.*, *Stanley*, 2024 WL 1743497, at *13 ("[P]er counsel's representation, because he did not have a professional relationship with [the] [p]laintiffs or any class member prior to the instant litigation, this factor is not applicable[.]").

### l.     Awards in Similar Cases

Regarding fee awards made in similar cases, the Court again notes that, even if only a quarter of the potential value of the settlement were ultimately paid out, i.e., about $8,271,450, the fee request would still only result in a percentage of about 2.5%. Generally, "[i]n situations such as this, where the Proposed Settlement creates a common fund, attorneys' fees of one-third or thereabouts are generally deemed reasonable."

15

*Thompson v. Qwest Corp.*, No. 17-cv-1745-WJM-KMT, 2018 WL 2183988, at *3 (D. Colo. May 11, 2018). Here, for the $206,843 in requested fees to equate to approximately one-third of the settlement, the settlement's payout would be reduced to $620,529. In other words, even if only $620,529 of the potential value of $33,085,800 were ultimately paid out, Plaintiff's fee request would still be reasonable. As it is, the fee request appears to be far below what is common in class action cases. The Court therefore finds that the twelfth factor weighs in favor of approval.

### m. Conclusion Regarding Fees

Weighing the *Johnson* factors, the Court finds that ten factors weigh in favor of approval and that two factors are inapplicable. Thus, the Court finds that $206,843 is a reasonable amount of fees to be awarded.[7]

Accordingly, the Court **recommends** that the Motion [#60] be granted to extent that an award of $206,843 in fees be **approved**.

### III. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#60] be **GRANTED**, as follows:

---

[7] The Court notes that, even after a loadstar cross-check, the fee award remains reasonable. *See, e.g.*, *Beasley*, 2024 WL 710411, at *7 n.4 (briefly cross-checking the percentage-of-the-fund method with the lodestar method). As of the date the Motion [#60] was filed, Plaintiff's counsel has incurred $94,655.00 in fees. *Borrelli Decl.* [#62] ¶ 21; *see also id.* ¶ 23 (noting that, "in the coming months, Class Counsel anticipates spending dozens of hours . . . overseeing the Claims administration process, answering questions from Class Members, drafting the final approval motion and memorandum, reviewing and addressing any objections to the settlement, preparing for and attending the final fairness hearing, and overseeing the distribution of cash payments"). At this time, $206,843 divided by $94,655 equates to a lodestar multiplier of approximately 2.19. *Borrelli Decl.* [#62] ¶ 22. "Courts have awarded fees equivalent to the loadstar [sic] with multipliers ranging from 0.8 to 4.6." *Bilinsky*, 2024 WL 4494290, at *7 n.4. A multiplier of 2.19, which will only decrease as counsel spends additional time on this lawsuit, easily fits within this range of reasonableness.

(1) that a service award of $2,500 for Plaintiff Jeffrey Pan be **approved**;

(2) that an award of $8,157 in costs be **approved**; and

(3) that an award of $206,843 in fees be **approved**.[8]

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

DATED: March 10, 2025                           BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

---

[8] The Court notes that the recommended approval of fees, costs, and the service award may be subject to class member objections, if any, to be addressed at the Final Fairness Hearing.